# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**No. 96-30352**
**Summary Calendar**

_____

**ROBERT E. SANDERS,**

**Plaintiff-Appellee,**

**versus**

**RUBICON INCORPORATED, ET AL,**

**Defendants,**

**RUBICON INCORPORATED,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Middle District of Louisiana**
**(93-CV-846)**

_____

November 25, 1996

Before JONES, DeMOSS, and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Appellee Robert W. Sanders ("Sanders") sued Uniroyal Chemical Company, Inc.

("Uniroyal") and appellant Rubicon Inc. ("Rubicon") alleging violations of the Employee Retirement

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981. Upon motion to the court, the district court dismissed Sanders' ADA claim as procedurally barred. Uniroyal and Rubicon then filed motions for summary judgment seeking to have Sanders' remaining claims dismissed. The district court dismissed all of Sanders' claims against Uniroyal. The court also dismissed Sanders' claims against Rubicon under the Civil Rights Act of 1991. However, the district court refused to dismiss Sanders' claims against Rubicon for retirement benefits under Rubicon's retirement plan and instead, *sua sponte*, awarded Sanders retirement benefits. Rubicon appeals. We reverse and render judgment in favor of Rubicon.

## BACKGROUND

Sanders began working for Rubicon on March 10, 1967. As an employee of Rubicon, Sanders was covered under the Rubicon Inc. Retirement Plan for Salaried Employees (the "Retirement Plan"), an emplo yee pension benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1). He was also covered under the Uniroyal Long Term Disability Income Plan (the "Disability Plan"), an employee welfare benefit plan which is sponsored and maintained by Uniroyal under its group insurance program.[1]

During his employment with Rubicon, Sanders filed a claim for benefits under the Disability Plan. As a result, his active employment with Rubicon ceased on November 4, 1988 when he began receiving long-term benefits under the Disability Plan. However, several years later, after being videotaped while playing golf and mo wing the lawn with no indication of any functional

---

[1]Uniroyal owns approximately 50% of appellant Rubicon. At all times relevant to this appeal, employees of Rubicon participated in the Disability Plan sponsored and maintained by Uniroyal. The Disability Plan is not at issue in this appeal.

limitation, the Disability Plan claims' administrator determined that Sanders was no longer disabled within the meaning of the Disability Plan. Accordingly, Sanders' disability benefits were terminated effective September 1, 1992, and Rubicon terminated Sanders' employment effective August 31, 1992.

In March of 1993, Sanders filed a claim for unreduced retirement benefits under Article IV(2)(b) or (c) of the Retirement Plan ("75-point retirement benefits" and "80-point retirement benefits," respectively).[2] The Retirement Plan in effect on September 1, 1992[3] -- the date of Sanders' termination -- provided that a participant could elect to receive certain early retirement benefits if:

(a) He or she attains age 55 and is credited with at least 5 years of Vesting Service;

(b) The sum of his or her age and Benefit Service earned while he or she is actively employed by the Employer equals or exceeds 75 and the Employer's physician determines that the Participant is physically or mentally unable to perform the duties assigned to the Participant by the Employer; or

(c) The sum of his or her age and Benefit Service equals or exceeds 80.

*See* Record at 427, Exhibit 1-A at 136, Retirement Plan as amended effective January 1, 1989, Article IV(2)(a-c).

The Retirement Plan Committee (the "Administrator")[4] denied Sanders' initial claim. In December of 1994, Sanders again filed for unreduced retirement benefits pursuant to Article IV(2)(b) or (c) of

---

[2]"Unreduced" retirement benefits refer to benefits which have not been actuarially reduced to reflect distribution prior to the "normal" retirement age of 65 years. Record at 280.

[3]The Retirement Plan became effective as of October 1, 1976. However, specific provisions of the Original Retirement Plan were amended from time to time, including an amendment executed on June 25, 1991, deemed effective as of January 1, 1989 (the "1989 Amendment"). The Retirement Plan in effect on September 1, 1992 -- the date of Sanders' termination -- was the Retirement Plan as amended by the 1989 Amendment.

[4]The Retirement Plan Committee is the body vested with administration of the Retirement Plan.

the Retirement Plan. *See* Record at 301. The Administrator again denied his claim. He then appealed the Administrator's denial of his claims. *See* Record at 304. After the Administrator reviewed his appeal, Sanders' claims for 75-point and 80-point retirement benefits were again denied. *See* Record at 344-46. However, the Administrator informed him that he was entitled to receive *reduced* early retirement benefits pursuant to Article IV(2)(a). Sanders is presently receiving those benefits.

Sanders filed suit with the district court claiming, *inter alia,* that the Administrator improperly denied his claims for 75-point and 80-point retirement benefits. The district court, reviewing the Administrator's decision *de novo*, reversed the decisions of the Administrator and *sua sponte* granted Sanders retirement benefits under both the 75-point and 80-point provisions of the Retirement Plan. Rubicon appeals.

**STANDARD OF REVIEW**

The district court's decision to conduct a *de novo* review of the Administrator's determinations under the Retirement Plan is a question of law. *See Chevron Chem. Co. v. Oil, Chem. and Atomic Workers Local Union 4-447,* 47 F.3d 139, 142 (5th Cir. 1995). We, therefore, conduct a *de novo* review of the district court's decision to review the Administrator's benefit determination *de novo*. *See id.*

A district court is to conduct a *de novo* review of a plan administrator's denial of benefits unless the benefits plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956 (1989); *see Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1556 (5th Cir.), *cert. denied,* 502 U.S. 973 (1991). If the benefits plan gives the administrator

4

discretionary authority to interpret plan terms, the district court reviews the plan administrator's

benefit determination for an abuse of discretion. *See Pierre,* 932 F.2d at 1556. The administrator's

factual determinations under an ERISA plan are reviewed for abuse of discretion. *See Pierre,* 932

F.2d at 1553.

## ANALYSIS

## I.

The district court erred as a matter of law in applying a *de novo* standard of review

in evaluating the Administrator's benefit determination. This court has recognized that the Supreme

Court in *Firestone Tire & Rubber Co. v. Bruch, supra,* did not consider plan administrators'

> discretionary authority [to] hinge[] on incantation of the word "discretion" or any other magic word. Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power -- *their authority to determine eligibility for benefits or to construe the terms of the plan.*

*Chevron Chem. Co.,* 47 F.3d at 142 (internal quotation marks omitted; emphasis added). The fact

that an ERISA plan "does not state that the Administrator has 'discretion' to make eligibility

determinations or plan interpretations . . . is not a *sine qua non* for an administrator to be vested with

such discretion." *Chevron Chem. Co.,* 74 F.3d at 142-43.

At all times relevant to this appeal, the Retirement Plan contained the following

provision:

> The [Retirement] Plan shall be administered by an Employee Benefits Committee . . . .. The Retirement Plan Committee shall have sole responsibility for the administration of this Plan, *including the interpretation of its provisions and the determination of the right of any person to a benefit,* and the decision of such Committee with respect to any question arising under this Plan shall be final and binding for all purposes . . .. The Employee Benefits Committee may delegate from time to time to officers or other employees of the Company such powers and duties in connection with the administration of this Plan as it may deem advisable.

5

Record at 427, Exhibit 1-A at 054 (emphasis added).

As a matter of law, this provision provides the Administrator discretionary authority to make eligibility and plan determinations. *See, e.g., Chevron Chem. Co.,* 47 F.3d at 142-43 (ruling that the administrator had discretion to make eligibility determinations or plan interpretations when given "the authority to control and manage the administration and operation of the [p]lan" and was empowered to make such rules, regulations, and interpretations and take such other action as the administrator may deem appropriate); *Wildbur v. Arco Chem. Co.,* 974 F.2d 631, 637 (5th Cir. 1992) (concluding that *Bruch* criteria for abuse of discretion review is satisfied when the administrator had discretionary authority to determine eligibility for benefits when plan provided that the administrator "shall make an independent determination of the applicant's eligibility for benefits under the [p]lan" and that decisions "shall be final and conclusive upon all persons if supported by substantial evidence in the record"), *reh'g denied,* 979 F.2d 1013 (1992). Accordingly, the district court erred in reviewing the decisions of the Administrator *de novo* when the Administrator's decisions should have properly been reviewed for an abuse of discretion.

Under the circumstances, this court is not required to remand this case to the district court for further proceedings. *See Chevron Chem. Co.,* 47 F.3d at 144-45. We will, therefore, review the decision of the Administrator to determine whether the Administrator abused its discretion. *See id.*

**II.**

Reviewing the Administrator's interpretation of the Retirement Plan for an abuse of discretion involves a two-step process. *See Wildbur,* 974 F.2d at 637. First, the reviewing court must determine whether the administrator gave the plan a legally correct interpretation. If the

6

administrator did not give the plan a legally correct interpretation, the reviewing court must then determine whether the administrator's decision was an abuse of discretion. *See id.* (citing *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.), *cert. denied,* 498 U.S. 939 (1990)).

## A.

In order to determine whether the Administrator's interpretation of the Retirement Plan was legally correct, this court first considers:

(1) whether the Administrator has given the Retirement Plan a uniform construction;
(2) whether the interpretation is consistent with a fair reading of the Retirement Plan; and
(3) any unanticipated costs resulting from different interpretations of the Retirement Plan.

*See Wildbur,* 974 F.2d at 637-38 (citing *Jordan,* 900 F.2d at 56).

The decision of the Administrator about which Sanders complains is the denial of Sanders' requests for both 80-point and 75-point retirement benefits.

## 1.

The provision of the Retirement Plan allowing for 80-point retirement benefits (the "80-point provision") provided that a participant could elect to receive certain early retirement benefits if "the sum of [the participant's] age and Benefit Service equals or exceeds 80."

In calculating Sanders' points, the Administrator considered Sanders' age at the time of his termination of employment (53 years) along with the number of years he was employed at Rubicon (25 years); Sanders was credited with 78 points (*i.e.,* 53 + 25). Explaining the computation of Sanders' points under the Retirement Plan, the Administrator stated:

> As part of its determination, the [Administrator] reviewed the language of the prior Retirement Plan document and the prior summary plan description. The [Administrator] has determined that the language in those documents is properly interpreted to mean that points (either age or service) can be earned *only* while a participant is actively employed by the Company."

7

Record at 345 n.* (emphasis in original).[5]  Because Sanders only had 78 points, the Administrator ruled that he was ineligible for 80-point retirement benefits.

We conclude that, in evaluating Sanders' requests, the Administrator has given the Retirement Plan a uniform construction and its interpretation is consistent with a fair reading of the Retirement Plan. Any different interpretation of the Retirement Plan would result in unanticipated costs.  If, for example, it were determined -- as the districtcourt concluded -- that Sanders was entitled to 80-point retirement benefits by basing Sanders' age points on his age at the time of his *request for benefits* instead of at the *time of termination of employment*, this would be an unreasonable interpretation of the Retirement Plan that would result in unanticipated costs.  The district court calculated Sanders' age points as of the time of the lawsuit because "there is no requirement [in the 80-point provision] that points for age be determined as of the time that active employment ceases." *See* Order and Reasons at 18.  However, if this were the given interpretation of the 80-point provision, all former Rubicon employees would ultimately be entitled to 80-point retirement benefits without regard to their years of service with the company.  It is unreasonable to interpret the terms of the Retirement Plan to reward ultimately *all* former employees of Rubicon without regard to their years of service.

---

[5]The "prior Retirement Plan document" to which the Administrator refers is the Retirement Plan in effect at the time that Sanders retired.  At the time of the Administrator's decision, the Retirement Plan provision allowing for 80-point retirement had been amended effective January 1, 1994 (the "1994 amendment"). The 1994 amendment clarified the 80-point provision by adding language which allowed for early retirement if the sum of the participant's "age and Benefit Service *(determined as of the last day on which he or she is actively employed by the Employer)* equals or exceeds 80."  Record at 295 (amending language emphasized).

**2.**

The provision of the Retirement Plan allowing for 75-point early retirement benefits

(the "75-point provision") provided for a participant to receive certain early retirement benefits if the

> sum of his or her age and Benefit Service earned while he or she is actively employed
> by the Employer equals or exceeds 75 *and* the Employer's physician determines that
> the Participant is physically or mentally unable to perform the duties assigned to the
> Participant by the Employer.

Record at 427, Exhibit 1-A at 136 (emphasis added). The Administrator determined that, although

credited with in excess of 75 points, Sanders did not satisfy the requirement of having a physician

determine him physically or mentally unable to perform his duties:

> The [Administrator] notes that at the time your employment with the Company ceased
> (on August 31, 1992), there was no determination that you were physically or
> mentally unable to work. In fact, medical and occupational reports developed in
> connection with the termination of your long-term disability benefits indicated that
> you were capable of working.

Record at 345. The Administrator stated that it had reviewed the medical evidence submitted by

Sanders in support of his claim and found it not to be dispositive of his claim because the medical

reports were dated between 1988 and 1991; "medical reports dated on or about the time your

employment with the Company ceased indicated that you were fit to work." Record at 345, n.**.[6]

---

[6]In concluding that Sanders was entitled to 75-point retirement benefits, the district court decided that the Administrator had applied an incorrect criterion by stating that Sanders was capable of working instead of stating that Sanders was capable of working *at Rubicon. See* Order and Reasons of the Court at 15. We do not agree. That the Administrator stated that Sanders was "capable of working" instead of stating that Sanders was "capable of working *at Rubicon*" is not an indication that the Administrator applied an incorrect criterion when deciding Sanders' eligibility for 75-point retirement benefits. The Administrator was entitled to evaluate the medical evidence generated when Rubicon found that Sanders duped it into continuing to pay disability and to infer from that evidence, including the retractions of disability ratings by Sanders's physicians, that he was indeed capable of performing his prior employment as a chemical analyst.

We conclude that the Administrator's decision regarding 75-point retirement benefits was consistent with a fair reading of the Retirement Plan.[7]

**B.**

Because the Administrator's interpretation of the 75-point and 80-point provisions of the Retirement Plan was legally correct, the Administrator's decision was not an abuse of discretion. At this point, we note that the district court made much of the fact that the Administrator had granted Sanders early reduced retirement benefits based on the provision of the Retirement Plan which provided for early retirement benefits if a participant "attains age 55 and is credited with at least 5 years of Vesting Service." The district court stated that, because Sanders was only 53 at the time his employment was terminated, granting Sanders benefits under this provision while at the same time denying Sanders benefits under the 75-point and 80-point provisions would be an inconsistent reading of the Retirement Plan. We disagree.

According to the Retirement Plan terms, the Administrator "shall have authority, which shall be exercised without discrimination, to make exceptions to provisions of this Plan under unusual circumstances where strict adherence to such provisions would work undue hardships." Record at 427, Exhibit 1-A at 054. The Administrator was well within its discretion under the unusual circumstances of Sanders' case to award Sanders, an employee for 23 years with Rubicon, early reduced retirement benefits based on this provision even though his age was two years shy of the provision's requirement.

---

[7]The foregoing dispositive rulings render it unnecessary for us to reach Rubicon's contention that after his termination, Sanders was no longer a "participant" in the plan.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is REVERSED and RENDERED in favor of appellant.